UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
CLIPPER WONSILD TANKERS            :
HOLDING A/S and KYLIE SHIPPING     :
COMPANY LTD.                       :
                 Plaintiffs,       :
                                   :     09 CV 9092 (RJS)
        - against -                :     ECF CASE
                                   :
BIODIESEL VENTURES, LLC,           :
FULCRUM POWER SERVICES Lp, and     :
NATIONAL BIOFUELS Lp               :
                                   :
                 Defendant.        :
-------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO FULCRUM POWER SERVICE'S MOTION FOR SUMMARY JUDGMENT IN SUPPORT OF ITS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, CLIPPER WONSILD TANKERS HOLDING A/S and KYLIE SHIPPING COMPANY LTD., ("Plaintiffs"), by and through their undersigned counsel, Tisdale Law Offices, LLC, submit this Memorandum of Law in Opposition to Defendant Fulcrum Power Service's Motion for Summary Judgment on Choice of Law and Alter Ego and in Support of Plaintiff's Cross-Motion for Summary Judgment on Choice of Law.

## FACTS

The facts relevant to this motion are set forth in Plaintiff's 56.1(b) Statement ("Plaintiffs' Stmt"), Plaintiffs' Counter Statement of Undisputed Facts ("Plaintiffs' Counter Stmt"), the Affidavit of Jonathan Baxendale (*Baxendale Aff.*") and the Declaration of Claurisse Campanale Orozco *("Orozco Decl.")* filed in support of Plaintiff's Opposition and Cross-Motion. These documents are fully incorporated and referenced throughout this memo.

## PROCEDURAL HISTORY

Plaintiffs' filed this action to satisfy a judgment of this Court against the Defendants. The judgment was obtained through New York arbitration.  The arbitration was conducted pursuant to a Charter Party between Plaintiffs and Defendant Biodiesel Ventures ("BV").  When Biodiesel breached the Charter Party, Plaintiffs commenced arbitration pursuant to that contract. *Fulcrum Stmt ¶¶ 127-128.*   On March 3, 2009, the arbitration panel issued its "Award" in Plaintiffs' favor for $572,164.46 and directed Biodiesel to also pay arbitrator's fees and post-judgment interest. *Fulcrum Stmt ¶ 128.*

Biodiesel never challenged the Award and despite due demand, never satisfied it. As a result, Plaintiffs filed its Complaint herein on October 30, 2009, amended on November 19, 2009, to confirm and enforce the Award against Biodiesel and/or its alter egos, Fulcrum Power Services ("Fulcrum") and National Biofuels ("NBF").  *Fulcrum Stmt ¶¶* 131,132.   Neither Biodiesel nor NBF has appeared in this action despite being properly served with process. Fulcrum answered the Amended Complaint and is the only Defendant participating in this action. *Docket No. 10.*

Plaintiffs moved to recognize and confirm the Award on July 2, 2010 and on July 27, 2010, this Court granted Plaintiffs' Motion. *Docket Nos. 22, 24.*  The Court held that Plaintiffs are entitled to "all provable damages, and all costs of suit and attorney fees incurred" under the terms of the charter and entered judgment in amount of $605,789.46. *Docket Nos. 24, 25.*

## LEGAL ARGUMENT

Because the Court has recognized the Award as a final judgment ("Judgment"), the issues that remain are 1. whether the Defendants are alter egos; and, 2. what law applies to that

determination. Plaintiffs' position is that federal common law applies to determine the alter ego relationship of the Defendants and as such, Plaintiffs can satisfy their judgment against Fulcrum.

Fulcrum now moves for summary judgment arguing that Texas law – as opposed to federal common law – applies to the determination of whether the Defendants are alter egos; and, that under Texas law, Plaintiffs have not and cannot prove that these Defendants are alter egos. Fulcrum also argues that if federal common law applies, Plaintiffs still cannot prove an alter ego relationship.

For all of the reasons stated below, Fulcrum's motion should be denied in all respects. Plaintiff's cross motion for the application of federal common law to determine the alter ego relationship of the Defendants must be granted.[1]

Pursuant to Fed. R. Civ. P. 56(c), a party will prevail on a motion for summary judgment when that party demonstrates that the pleadings, depositions, and discovery on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A fact is material if it might affect the outcome of the suit under the governing law. In determining whether genuine issues of material fact exist, the evidence *of the non-movant is to be believed*, and all justifiable inferences are to be drawn in favor of the non-moving party. A fact is material if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A "genuine issue" of a material fact exists when a rational fact finder, considering the evidence in the summary judgment record, could find in favor the non-moving

_____

[1] While Plaintiffs believe that they have enough evidence to prove alter ego liability, the factual disputes between the parties are overwhelming. Thus, Plaintiffs do not believe that summary judgment is appropriate on the issue of alter ego liability and is not cross- moving on that issue.

party. *See Ricci v. DeStefano*, ___ U.S. __, 129 S.Ct. 2658, 2677 (2009). The court *must* deny summary judgment when a genuine issue of material fact remains to be tried, or where the moving party is not entitled to judgment as a matter of law. *See Edwards v. Aguillard,* 482 U.S. 578, 595 (1987) (fact that the moving party's summary judgment record is uncontested or not responded to is insufficient to warrant summary judgment.) *See* Rule 56 advisory committee note to 2007 amendments. Likewise when the court finds that the wiser course would be to proceed to trial, summary judgment is inappropriate. *Liberty Lobby,* 477 U.S at 255.

The moving party must first make a showing that summary judgment is appropriate under Rule 56 which can be satisfied by pointing out an absence of evidence in support of a non-moving party's claims or defenses. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). The non-moving party's evidence will be believed as true, all doubts resolved against the moving party, all evidence construed in a light most favorable to the non-moving party, and all reasonable inferences made in favor of the non-moving party. *See Crawford v. Metropolitan Gov't Nashville & Davidson County,* 555 U.S. 271, 129 S.Ct. 846, 849 n.1 (2009).

Because there are a significant number of material facts in dispute on the issue of alter ego liability, Fulcrum's motion must be denied. There are no material facts in dispute related to the maritime nature of the Plaintiff's underlying claim which it is seeking to enforce. For that reason, the Court can decide choice of law and upon a review of the record, will find that federal common law applies in this case.

## I.     FEDERAL COMMON LAW GOVERNS THE ALTER EGO ISSUE

Federal common law applies to determine whether these Defendants are alter egos. Plaintiffs' claim is to enforce a Judgment of this Court against Biodiesel's alter egos. The underlying claims that resulted in the Judgment were arbitrated under the charter party, a

4

maritime contract. *Plaintiffs' Counter Stmt ¶ 5.* Federal maritime law was applied in arbitration. The arbitration panel determined that Biodiesel breached the charter and awarded Plaintiffs damages for freight and demurrage there under. *Id.* These facts are not disputed. As such, federal maritime law controls.

1.    **The Charter Party Which Gave Rise to this Action was a Maritime Contract Supplying this Court with Admiralty Jurisdiction**

It is undisputed that a charter party is a maritime contract and any breaches thereunder are subject to the maritime jurisdiction of a Court. *Armour & Co. v. Fort Morgan S.S. Co.*, 270 U.S. 253, 259 (1926); *Fednav, Ltd. v. Isoramar*, S.A., 925 F.2d 599, 601 (2d Cir. 1991)("It is well-established that a charter party agreement is a maritime contract.") The present dispute seeks to enforce the Award and Judgment against alter egos of Biodiesel for breach of the charter party. *Fulcrum Stmt at ¶ 134.*

The Order that granted Plaintiffs' Motion to Confirm the Arbitration Award is a Judgment of this Court. Plaintiffs' Counter Stmt at ¶ 6, Docket No. 24, at 3, *citing D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006). This Court adopted the Final Award's holding that Biodiesel breached the charter party. *Id., at 4*. This conclusively establishes that admiralty jurisdiction exists here because the underlying dispute was for breach of an undisputedly maritime contract. Defendants' Verified Answer dated January 4, 2010 does not contest this Court's admiralty jurisdiction. *Fulcrum's Answer, Docket No. 9, ¶¶ 1-2.*

2.    **Federal Common Law Applies Where Admiralty Jurisdiction Exists**

It is axiomatic that a Court sitting in admiralty applies federal common law to the issues raised in the cause of action. *Holborn Oil Trading, Ltd. v. Interpetrol Bermuda, Ltd.,* 774 F. Supp. 840, 843 (S.D.N.Y. 1991) (Leisure, J.). In that case, plaintiff sought to enforce an

arbitration award against defendant's alter egos. The court discussed choice of law principles to determine whether state or federal law applied to pierce the corporate veil. Judge Leisure held that because the cause of action underlying the arbitration was a maritime claim, any enforcement of that award also sounded in admiralty.

Relying on U.S. Supreme Court precedent, Judge Leisure properly recognized that "[t]his Court clearly has the power to pierce the corporate veil when sitting in admiralty." *See id.*, at 844 n.4, citing *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684, 689 n.4 (1950) ("The jurisdiction of a court in admiralty to determine the question of alter ego is undoubted.")

*Holborn* is directly on point with the present action. Plaintiffs' arbitration claim was a maritime claim to recover freight and demurrage under the charter party. The cause of action to enforce this Judgment Judgment, against Biodiesel's alter egos sounds in admiralty. *See id.*

Numerous courts have held that "federal courts sitting in admiralty must apply federal common law when examining corporate identity." *Holborn Oil Trading, Ltd.*, 774 F. Supp. 840, at 844, *quoting Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.* 782 F.2d 329, 342 (2d Cir. 1986); *Kirno Hill Corp. v. Holt*, 618 F.2d 982 (2d Cir. 1980); *Maritime Ventures Int'l, Inc. v. Caribbean Trading & Fidelity, Ltd.* 689 F. Supp. 1340, 1348 (S.D.N.Y. 1988); *see also Talen's Landing, Inc. v. M/V VENTURE II*, 656 F.2d 1157 (5th Cir. 1981).

In *United States of America v. Afram Lines International, Inc.*, 1997 U.S. Dist. LEXIS 10891 (July 29, 1997 S.D.N.Y.), the issue was "choice of law to be applied in determining whether to pierce the corporate veil" *Id.,* which is the very issue here. In *Afram*, Judge Martin cited *Holburn*, *supra* and held that "[f]ederal courts sitting in admiralty must apply federal

common law when examining corporate identity." *Id.*  *Afram* is also directly on point to this action. The Court here is sitting in admiralty and must apply federal common law.

In a more recent case, Chief Judge Preska held that "[f]ederal maritime common law is appropriately applied to corporate control liability theories in maritime actions in order to promote uniformity throughout the maritime law." *In re M/V Rickmers Genoa Litigation*, 643 F. Supp. 2d 553, 556 (S.D.N.Y. 2009).  Chief Judge Preska quoted *Norfolk Southern Ry., Co. v. Kirby*, 543 U.S. 14 (2004)), wherein the Supreme Court ruled:

> Article III's grant of admiralty jurisdiction must have referred to a system of law coextensive with, and operating uniformly in, the whole country.  It certainly could not have been the intention to place the rules and limits of maritime law under the disposal and regulation of the several States, as that would have defeated the uniformity and consistency at which the Constitution aimed on all subject of a commercial character affecting the intercourse of the States with each other or with foreign states.

(internal quotation marks omitted in original); *see also Pink Goose Cayman, Ltd. v. Sunlink Traders, LLC*, 2008 U.S. Dist. LEXIS 82801, at *2 (Oct. 17, 2008) ("alter ego theories of liability are *prima facie* admiralty claims so long as the underlying claim arose in admiralty").

Fulcrum's arguments related to diversity are meritless.  Plaintiffs only invoked the admiralty jurisdiction of this Court. *Fulcrum Stmt ¶ 133.*  Plaintiffs did not allege diversity as a basis for jurisdiction.  *Plaintiffs' Stmt ¶ 133.*  Even if diversity was alleged, the rule in this Circuit is clear:  When a party files suit based upon diversity jurisdiction, the Court must apply substantive federal maritime law where admiralty jurisdiction exists. *Preston v. Frantz*, 11 F.3d 357, 358 (2d Cir. 1993) (per curiam); *see also Capozziello v. Brasileiro*, 443 F.2d 1155, 1157 (2d Cir. 1971) ("That the district court's diversity, rather than its admiralty, jurisdiction had been invokes does not change the applicable [maritime] law.").

As stated, the Award was based on maritime law and is now a Judgment of this Court. *Plaintiffs Counter Stmt ¶ 6.* The present cause of action is to enforce this Judgment against the alter egos of the breaching charterer. Federal common law governs the determination of Defendants' corporate identity. *See id., see also SPL Shipping Ltd. v. Gujaret Cheminex Ltd. et al.,* 2008 U.S. Dist. LEXIS 95674, at * 9 (S.D.N.Y. Sept. 10, 2008) (Sullivan, J.) ("in order to pierce the corporate veil the plaintiff in a maritime case must show that the entity charged with being the alter ego was used by another entity or individual to perpetrate a fraud or was so dominated in its corporate forum disregarded such that it primarily transacted the other entity or individual's business.") (internal quotations omitted).

Fulcrum now asks this Court to overlook clear Second Circuit precedent respecting the uniformity of admiralty jurisdiction citing non-binding, out of circuit cases that are distinguishable. Fulcrum's argument that the Court looks to state law is not applicable here where admiralty jurisdiction has been invoked and federal common law applies. On a motion for summary judgment, whether the disputed fact is material depends on the applicable substantive law at issue in the case. *Liberty Lobby,* 477 U. S. 242, 248 (1986). Once the substantive law is determined, the Court will conclude that Fulcrum's motion seeking the application of Texas law must be denied. *Holborn Oil,* 774 F. Supp. 840 at 845.

## II.    THE DEFENDANTS ARE ALTER EGO UNDER FEDERAL COMMON LAW

It is the Plaintiff's position that the Defendants are alter egos of each other because Fulcrum so dominated and disregarded NBF's and BV's corporate form to such an extent that Fulcrum carried on the business of both NBF and BV as if the same were its own. The testimony of Fulcrum's own witnesses who were deposed, Gerardo Manalac and Kimberly Casey, supports this.

8

Under federal law, corporate form will be ignored and liability imposed on another corporate entity or the principals, if it is shown that the interconnected organization was utilized to perpetrate a fraud or where one entity or individual(s) so dominated another that it was, in effect, carrying on the principal's business. *See Kirno Hill Corp. v. Holt*, 618 F.2d 982, 985 (2d Cir. 1980). Here, the factual evidence supports a finding that Fulcrum so dominated NBF and BV such that they were mere tools or instrumentalities of Fulcrum used to carry on Fulcrum's overall business. *See id.; see also Holburn, supra*, 774 F. Supp. at 844. *Plaintiffs' Stmt ¶¶ 24, 27, 28, 33, 47, 51, 59, 91; Plaintiffs Counter Stmt ¶¶ 14, 15, 17, 26, 28, 29.* Fulcrum's motion must be denied.

There is no precise test to determine whether entities are alter-egos, but generally, the corporate veil may be pierced where it can be demonstrated that the parent or controlling entity was the "true" or prime mover behind the subsidiary. *See Carte Blanche (Singapore) v. Diners Club Intern*, 758 F. Supp. 908, 918 (S.D.N.Y. 1991). In *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F. 2d 131, 139 (2d Cir. 1991), the Second Circuit listed a number of factors be considered to determine whether to pierce the corporate veil. *See generally, Barber, Piercing the Corporate Veil*, 17 Willamette L. Rev. 371, 398 (1981); *Directors Guild of America v. Garrison Prod.*, 733 F.Supp. 755, 760-61 (S.D.N.Y. 1990); *United States Barite Corp. v. M/V Haris*, 534 F. Supp. 328, 330 (S.D.N.Y. 1982).

In its memorandum of law, Fulcrum discusses the negotiation of the charter party and other matter relating to the charter party agreement. *Fulcrum. Memo at 2, 7-8, 18- 19, 27.* However, the charter party and matters relating to it cannot be contested. The underlying arbitration which construed that charter party has been confirmed and is a Judgment of this Court. *Plaintiffs' Counter Stmt ¶ 6; Docket Nos. 24, 25.*

9

An analysis of these factors, separately enumerated below, provides substantial evidence to dispute the "undisputed facts" as stated by Fulcrum.[2]    The evidence does not support Fulcrum's position and its motion must be denied.

**1.    Absence of Corporate Formalities.**

One factor courts look to when considering whether to pierce the corporate veil is the absence of the formalities which are part and parcel of the corporate existence. *Heller v. Video Innovations, Inc.* 730 F.2d 50, 53 (2d Cir. 1984). These formalities include the issuance of stock, election of directors, and the keeping of corporate records, among other activities. *Id.*

Fulcrum has produced numerous documents in an attempt to satisfy its position that the Defendants operated as separate corporate entities. *Bradshaw Decl. Exh.s' A-K.* However, any attempt to maintain formalities through documentation provided is outweighed by the testimony of the principals Defendants to date and the course of conduct of these companies.[3] *See e.g., Plaintiffs' Stmt ¶¶ 6, 18, 24, 27, 33.*

Examples of the lack of corporate formalities were highlighted during the deposition of Mr. Manalac, the current Executive V.P. of Fulcrum. When NBF was first incorporated, Manalac served as an NFB's CEO and authorized representative.    Manalac signed documents incorporating NBF and the documents dissolving it. *Plaintiffs' Counter Stmt ¶¶ 27-28. Orozco Decl. Exh. A.*    Manalac made numerous decisions on behalf of NBF, sometimes as NBF's CEO

---

[2] It is noteworthy that Fulcrum did not submit an affidavit from its own Rule 30(b)(6) witness, Gerardo Manalac, the main corporate representative of the Defendant entities.
[3] Many documents requested by Plaintiffs early in discovery have just recently produced. Additional testimony will be required from the Defendants related to this late production.

and sometimes as a member of Fulcrum Energy's[4] executive committee.  Manalac had the authority to reject or accept contracts entered into by NBF – not as a result of his position with NBF – but because he was an officer of Fulcrum. *See Plaintiff's Counter Stmt ¶¶ 19, 26, 28.*

Manalac and Bradshaw, two founders of Fulcrum, served on Fulcrum's and NBF's executive committee.  All decisions related to NBF were made either by Manalac as its CEO or executive committee member or by Manalac and Bradshaw, sometimes as members of FE's executive committee or sometimes as members of NBF's executive committee. *Manalac Depo at 39:17-21; 104:9-105:25.*  There is no evidence that distinguishes when Fulcrum was making operational decisions about NBF or when NBF's executive committee was allegedly making such decisions. *Manalac Depo at 104:9-105:25.*  This is not surprising, of course, given that the only two individuals involved were partners and executive committee members of both entities.

BV was a wholly owned subsidiary of NBF and fully operated, managed and controlled by NBF, through Mr. Manalac as BV's "authorized representative." *Manalac Depo at 197:23-198:9; 200:15-201:7.*   Thus, the same conclusion can be reached that Fulcrum had full managerial and operational control over BV. *Plaintiffs' Counter Stmt ¶¶ 23-24, 26.  See also Afram,* 1997 U.S. Dist. Lexis, at *6 (Finding that the two entities at issue were not independent where one person ran both companies and engaged in major transactions without proper corporate approval).

It is evident that these Defendants did not maintain proper corporate formalities that separated them as distinct entities. *Plaintiffs' Stmt ¶¶ 6, 7, 18, 24, 29, 33, 38, 42-47, 51, 55-56, 59 60, 68, 73, 79, 83-85, 90, 91.*  The case of *Afram, supra* supports this conclusion.  In *Afram,*

---

[4] Fulcrum Energy is the parent company of Fulcrum Power Services, and its sole purpose is to serve as the general partner of Fulcrum Power Services. *Plaintiffs Smt ¶4.* Thus, Fulcrum Energy and Fulcrum Power are both referenced herein as Fulcrum.

evidence showed that one individual ran at least two of the entities at issue and engaged in major transactions without appropriate corporate approval. Judge Martin found that the two companies were not independent and pierced the corporate veil. *Afram Lines*, 1997 U.S. Dist. LEXIS 10891, at *6. There, the two corporations shared office space, employees, telephones, had common ownership, had overlapping directors, and there was evidence that one individual effectively ran both of the corporations. *Id.*

Here, Plaintiffs have submitted evidence to demonstrate that all of the alter ego factors Judge Martin found to be present in *Afram* exist in this case. In *Afram*, the Court stated that while there was some attempt to respect corporate formalities through the maintenance of separate corporate minutes and financial statements, the evidence that one individual ran both of the companies supported its conclusion that the entities were alter egos of each other. *Afram Lines*, 1997 U.S. Dist. LEXIS 10891, at *6 (while the court found evidence of differences in ownership and officers, it held that such evidence was insufficient to establish that the companies were distinct.) Here, there is even less evidence to support such distinct operations. There are no NBF executive committee meeting minutes. There are no separate financial records of NBF or BV despite that Fulcrum's staff provided accounting services and there are no separate banking transactions of NBF or BV, other than receipt of funds from Fulcrum or payment of NBF and/or BV debt directly by Fulcrum. *Plaintiffs' Stmt ¶¶ 67-73.*

## 2.    Inadequate Capitalization

NBF and BV admittedly had inadequate capital and were funded solely by contributions from Fulcrum. Fulcrum provided start-up capital for NBF and transferred funds to NBF and BV operating accounts so that those entities could operate. *Manalac Depo at 82:13-25: See Bradshaw Decl. ¶ 10.* NBF was in significant debt to Fulcrum for administrative services

provided pursuant to an Administrative Services Agreement. *See Fulcrum Exh. I.* NBF never paid its debt under that contract because it was under-capitalized, yet Fulcrum did nothing to collect on this debt. *Fulcrum Exh. I; Manalac Depo at 81:6-82:12.* Despite this significant debt by an alleged independent entity, Fulcrum ignored NBF's breaches of the Agreement, continued to provide the services and simply stopped invoicing NBF for the monthly fees. *Manalac Depo at 80:7-24.*

This substantial undercapitalization is significant because it is further evidence of the lack of NBF and BV's independent substance. *Classic Maritime Inc. v. Limbungan Makmur SDN BHD*, 646 F. Supp. 2d 364, 371 (S.D.N.Y. 2009) (internal citations omitted). Manalac made the decision to forego collection efforts of the debts owed by NBF to Fulcrum. NBF was admittedly underfunded. BV, as its wholly owned subsidiary, was in the same situation. *Manalac Depo at 144:5-7; 141:5-11.* Fulcrum paid of NBF and BV's financial debts and made significant contributions into their operating accounts for no consideration. *Plaintiffs' Stmt ¶¶ 29, 54, 68, 70, 72.* NBF and BV existed only on paper. *Plaintiffs' Stmt ¶ 27.*

3.    **Overlap in Ownership, Officers, Directors, and Personnel**

Despite Fulcrum's contentions, there are numerous examples of common ownership and overlap between these Defendants. *Plaintiffs' Stmt ¶¶2-9.* In addition to common founders, directors and officers, Fulcrum's employees performed office work and accounting services to NBF and BV under the Administrative Services Agreement mentioned above, with being reimbursed for these services. *Plaintiffs' Stmt ¶¶ 55, 56, 73, 85, 91.* Fulcrum argues that Kim Casey was the only overlapping employee of BV and Fulcrum, *Fulcrum Memo at 22*, but Casey testified that Manalac ran BV. *Plaintiffs' Stmt. ¶ 47.*

4.      **Common Office Space, Address, and Telephone Numbers of Corporate Entities**

There is substantial evidence that the Defendants share the same address and office space in Houston, TX. *Plaintiffs' Stmt ¶¶ 79, 80, 83, 84, 91.*    While Fulcrum and NBF's telephone numbers were apparently different, they rang at the same address. *Manalac Depo at 51:22-25; 52:1-7; 146:6-15.*  BV had no phone line but if someone wanted to contact BV, they would call NBF's number. *See id. at 148:9-11.*  The office space was leased by Fulcrum and NBF and BV paid no rent.

Mail for each Defendant was also sent to the same address at 5120 Woodway Drive and this address was listed on each entity's corporate registration forms filed with the Texas Secretary of State. *See Orozco Exh. A.*

5.      **Business Discretion Displayed by the Allegedly Dominated Corporation**

The corporate veil may be pierced where a corporate entity is completely controlled by another and has no will of its own. *In re.  Holborn Oil Trading Ltd.,* 774 F. Supp. 840, 844 (S.D.N.Y. 1991).  It is clear that BV and NBF had no wills of their own and were dominated by Fulcrum.

Manalac has admitted that he ran the Defendant entities. *Plaintiffs' Stmt  ¶¶ 6, 18, 24, 33, 42-47, 51, 91.* Ms. Casey confirmed this. *Plaintiffs' Stmt ¶ 47.*  Without Casey's knowledge or consent, Manalac appointed her as CEO and President of Biodiesel yet he made the crucial business decisions on behalf of BV without her knowledge. *Casey Depo at 53:4-12; 56:19-25; 57:1.*  Manalac was the "authorized representative" of BV yet there is no evidence to justify this appointment other than Manalac's statements. *Manalac Depo at 222:7-22.*

BV was a shell which Fulcrum used as an instrumentality and had absolutely no will of its own.  BV could not exercise business discretion if its President and/or CEO had no

14

knowledge of its business dealings.  Casey herself attested to the domination of BV by Fulcrum when she stated that Manalac ran Biodiesel despite that he claims that he was neither a director nor employee of that entity.  *Plaintiffs' Stmt. ¶ 47*; *Afram Lines*, 1997 U.S. Dist. LEXIS 10891, at \*6 (The evidence that one individual ran both of the companies supported the conclusion that the entities were alter egos of each other.)

**6.    Arms Length Transactions and Dealings.**

Evidence of the absence of arm's length dealing is another indicator of alter ego liability. *In re. Holborn Oil Trading Ltd.*, 774 F. Supp. at 846.    These Defendants did not operate separately as independent entities.  A perfect example of the absence of arm's length dealing in this case is the fact that Manalac negotiated the sales contract between BV and third parties for the sale of the fuel that was carried aboard Plaintiffs' Vessel under the charter party that BV has breached.  *Plaintiffs' Stmt ¶¶ 97, 118.*  Manalac negotiated the sales contract on behalf of BV, although he claimed to have no role in the operation of BV other than as an "authorized representative."  Manalac also negotiated and had final approval for all charter parties for BV's account, including BV's charter with Plaintiffs.   *Manalac Depo at 174:10-25-175:1-17.* Examples of the lack of arms lengths dealing are abundant.  *Plaintiffs' Stmt ¶¶ 2-11.*

**7.    Whether the Corporations are Treated as Independent Profit Centers**

Whether the corporations are treated as independent profit centers is a factor which courts in the Second Circuit consider when examining alter ego status. *Wm. Passalacqua Builders, Inc.* 933 F.2d at 139.  While one would certainly expect that independent corporations would be maintained as independent profit centers, no evidence supports this here.  Fulcrum was the only profit center, assumed all debts and obligations of NBF and BV and made significant capital contributions to these entities with no consideration. *Plaintiffs' Stmt ¶¶ 29, 54, 68, 70-72.*  No

accounting records from BV have ever been provided, despite that Fulcrum's accounting staff provided such services to BV. *Manalac Depo at 194:1-9; 163:7-15.*

**8.      Payment or Guarantee of Debts of the Dominated Corporation**

Evidence of the payment of debts on behalf of a company is also significant in the analysis of an alter ego case because it demonstrates control and a lack of regard for corporate formalities. *Classic Maritime Inc.*, 646 F. Supp. 2d at 371.

Fulcrum assumed debts and liability on behalf of NBF and BV, guaranteed loans, paid legal expenses and settlements for NBF and provides free administrative and accounting services to NBF and BV. *Plaintiffs Stmt ¶¶ 29, 54, 55, 56, 68, 70-72, 73, 85, 91.* Manalac confirmed this. *Id.* The Second Circuit has recognized that this sort of intermingling of funds is an indicator of alter ego status. *Wm. Passalacqua*, 933 F.2d at 140.

Application of the above factors varies with "the circumstances of each case." *Wm. Passalacqua*, 933 F.2d at 139. Ultimately, the fact finder must consider the totality of the evidence and determine whether the policy behind the preference for corporate independence is outweighed by the policy justifying the need to protect those who deal with the corporation. *Id.* Moreover, courts apply "the preexisting and overarching principle that liability is imposed to reach an equitable result." *Afram* 1997 U.S. Dist. LEXIS at *3 (*quoting Bridgestone/ Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 18 (2d Cir. 1996).

In this case, the evidence demonstrates that the Defendants were operated under the control of Fulcrum via Mr. Manalac. Corporate formalities and arm's length dealing were disregarded. Fulcrum was the sole source of funding for NBF and BV. Fulcrum provided office space and administrative services to NBF and BV free of charge because all of the entities were actually one in the same. Finally and most importantly, the Defendant entities were structured to

avoid their contractual obligations and were in fact used to fraudulently deprive Plaintiffs' of money due and owing under the charter party. BV's liability to Plaintiffs was determined in arbitration and is a Judgment of this Court. This is precisely the situation where piercing the corporate veil is necessary to protect parties such as the Plaintiffs. If the corporate veil is not pierced, Plaintiffs will suffer an injustice at the hands of the defrauding Defendants and the policy of protecting those who transact business will be violated. *See Wm. Passalacqua Builders, Inc.,* 933 F.2d at 139.

The role of the Court on a summary judgment motion is not to weigh credibility of the evidence or the competing inferences therefrom, but rather to see if there is an issue of fact that must be submitted to the finder of fact. Because there are numerous such facts in dispute, Fulcrum's motion on alter ego must be denied. *In re Holborn Oil Trading Ltd.,* 774 F. Supp. 840, 846 (S.D.N.Y. 1991) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

## III.    UNDER TEXAS LAW, PLAINTIFF HAS CREATED A GENUINE ISSUE OF MATERIAL FACT

Plaintiffs submit that Texas law is inapplicable to this instant case. It is clear that federal common law applies. *See Point I at pgs 4-8 supra.* If the Court determines that Texas law applies to the issue of alter egos, Plaintiffs submit that under Texas law there are genuine issues of material fact that preclude summary judgment in Fulcrum's favor.

## 1.    Under Texas Law, Corporate Form May Be Disregarded if a Corporation Functions as Alter-Ego of Another Corporation

Courts applying Texas law disregard corporate form when corporations are not operated as separate entities but rather integrate their resources to achieve a common business purpose. *Old Republic Ins. Co. v. Ex-Im Servs. Corp.,* 920 S.W.2d 393, 395-96 (Tex. App. – Houston [1st

17

Dist.] 1996, no writ). Where the subject corporation is organized or being used as a mere tool or business conduit, Texas law allows imposition of alter ego liability. *Hall v. Timmons*, 987 S.W.2d 248, 250 (Tex. App. – Beaumont 1999, no writ). It applies "when there is such unity between the parent corporation and its subsidiary that the separateness of the two corporations has ceased to exist and holding only the subsidiary corporation liable would result in injustice." *Harwood Tire- Arlington, Inc. v. Young*, 963 S.W.2d 881, 885 (Tex. App. – Fort Worth 1998, writ dism'd by agr.). Alter ego is demonstrated "by evidence showing a blending of identities, or a blurring of lines of distinction, both formal and substantive, between two corporations. *Hideca Petroleum Corp. v. Tempimex Oil Int'l Ltd.*, 740 S.W.2d 838, 843 (Tex. App. – Houston [1st Dist.] 1987, no writ).

2.      **Under Texas Law, the Defendants are Alter Egos of One Another**

Applying Texas law, the Fifth Circuit has found that the fact that a subsidiary company was undercapitalized and unable to pay a judgment is a critical factor in the alter ego analysis because alter ego is an equitable remedy designed to prevent a company from avoiding liability by abusing the corporate form. *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 594 (5th Cir. 1999). In this case, the record is replete with evidence that Fulcrum paid the debts of NBF and BV, provided office space and administrative services for no charge, paid for legal fees and settlements on their behalf in additional numerous other instances of financial support. *See supra* discussion of alter ego factors.

3.      **The Dissolution of BV Before Entry of an Enforceable Judgment Was an Actual Fraud Perpetrated by Fulcrum to Avoid Satisfaction of that Obligation**

Once alter ego is found to exist, the plaintiff must show that the entity upon whom liability is sought to be imposed purposefully caused the corporation to be used to perpetrate an

actual fraud for his own personal benefit. *Signal Peak Enterprises of Texas, Inc. v. Bettina Investments, Inc.*, 138 S.W.2d 915, 925 (Tex. App. Dallas 2004) (Internal Citations Omitted). Here, Manalac made the decision to dissolve BV. *Plaintiffs' Stmt 24*. This dissolution occurred after BV had incurred liabilities through contractual breaches and after the arbitration award was issued, but before it became an enforceable judgment. This constitutes an actual fraud perpetrated at the direction of Fulcrum (Manalac) to defraud creditors out of money rightfully owed to them. In any event, there exist triable issues of fact as to the facts and circumstances surrounding this actual fraud precluding issuance of summary judgment in favor of Defendants.

## CONCLUSION

For all of the reasons stated herein, Fulcrum's motion for summary judgment must be denied and Plaintiff's cross motion for summary judgment seeking an order that federal common law applies to the issue of alter ego must be granted.

Dated:  June 6, 2011
        New York, NY

                                        The Plaintiffs,
                                        CLIPPER WONSILD TANKERS
                                        HOLDING A/S and , KYLIE SHIPPING

                                        COMPANY LTD.,

                        By:     _Claurisse C. Orozco_
                                Claurisse C. Orozco (CC 3581)
                                Thomas L. Tisdale (TT 5263)
                                TISDALE LAW OFFICES, LLC
                                60 East 42nd Street, Suite 1638
                                New York, NY 10165
                                (212) 354-0025 / (212) 869-0067 (fax)
                                corozco@tisdale-law.com
                                ttisdale@tisdale-law.com

## CERTIFICATION OF SERVICE

I hereby certify that on June 6, 2011, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's CM/ECF system.

Claurisse Campanale-Orozco