# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

No. 09 Civ. 9092 (RJS)

CLIPPER WONSILD TANKERS HOLDING A/S AND KYLIE SHIPPING CO. LTD.,

Plaintiffs,

VERSUS

BIODIESEL VENTURES, LLC, FULCRUM POWER SERVICES LP, AND NATIONAL
BIOFUELS LP,

Defendants.

OPINION AND ORDER
February 15, 2012

USDS SDNY
DOCUMENT
ELECTRONICALLY FI
DOC #: _____
DATE FILED: 2-15-12

RICHARD J. SULLIVAN, District Judge:

Plaintiffs Clipper Wonsild Tankers Holding A/S and Kylie Shipping Company, Ltd. (collectively, "Plaintiffs") bring this admiralty action for declaratory relief against Defendants Biodiesel Ventures, LLC ("Biodiesel"), Fulcrum Power Services LP ("Fulcrum"), and National Biofuels LP ("NBF"), alleging that Biodiesel was an alter ego of both Fulcrum and NBF and that all three Defendants are liable for an arbitration award that was issued in Plaintiffs' favor in 2009. Before the Court is Fulcrum's motion for summary judgment. For the reasons stated below, Fulcrum's motion is denied.

## I. BACKGROUND[1]

At the heart of this case is the alleged breach of a charter agreement – or a "charter party" – between Plaintiffs and Biodiesel, co-defendant and alleged alter ego of Fulcrum, in July 2007. Shortly after an arbitration panel found in Plaintiffs' favor in 2009, Biodiesel dissolved; to date, Plaintiffs have been unable to collect on the arbitration award. In this action, Plaintiffs allege that Biodiesel was the alter ego of both Fulcrum and NBF, and that Fulcrum is therefore liable to Plaintiffs for the arbitration judgment.

[1] The following facts are taken from the pleadings, the parties' Local Rule 56.1 Statements, the affidavits submitted in connection with the instant motion, and the exhibits attached thereto. The facts are undisputed unless otherwise noted.

Fulcrum is a limited partnership formed under Texas law in 2003. (Def. 56.1 Stmt. ¶¶ 1, 2.) At the time of formation, Jesson A. Bradshaw ("Bradshaw") and Gerardo P. Manalac ("Manalac") were limited partners of Fulcrum, and Fulcrum Energy LLC, formed under Delaware law, was the general partner. (*Id.* ¶¶ 3, 4, 5.) In April 2005, Fulcrum and two other individuals created NBF under Texas law. (*Id.* ¶ 9, 10.) In October 2005, NBF formed Biodiesel to "take advantage of certain economic, transaction and marketing opportunities relating to the sale of biodiesel in the United States." (*Id.* ¶¶ 22, 23.)

Plaintiffs entered the charter party at issue with Biodiesel on July 16, 2007. (*Id.* ¶ 92.) Neither Fulcrum nor NBF was a party to the contract. (*Id.* ¶¶ 94-95.) In October 2007, after Biodiesel could not satisfy the amounts due to Plaintiffs, Plaintiffs filed a complaint against Biodiesel, alleging that Biodiesel breached the charter party and seeking to attach Biodiesel's funds pursuant to Rule B of the Supplemental Admiralty and Maritime Rules of the Federal Rules of Civil Procedure. On October 23, 2007, Plaintiffs amended that complaint to add Fulcrum and NBF as defendants, alleging that Fulcrum and NBF were alter egos of Biodiesel. Judge Chin, to whom the case was initially assigned, approved an *ex parte* order of attachment in November 2007. The case was then stayed pending an arbitration between Plaintiffs and Biodiesel. On March 3, 2009, an arbitration panel issued an award in Plaintiffs' favor in the amount of $572,164.46. Biodiesel never challenged or appealed the arbitration award, and, to date, has failed to pay the judgment. Significantly, Biodiesel was dissolved on March 25, 2009, and NBF was dissolved on March 27, 2009. (Def. 56.1 Stmt. ¶¶ 32, 30.)

After the Second Circuit's decision in *Shipping Corporation of India v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009), Plaintiffs initiated the present lawsuit against Defendants Biodiesel, NBF, and Fulcrum on October 30, 2009, seeking, *inter alia*, to impose alter ego liability on Fulcrum for breach of contract by Biodiesel. (Compl. ¶ A.) The case was reassigned to my docket on May 12, 2010. Plaintiffs filed a Petition for the Confirmation and Recognition of Final Arbitration Award against Biodiesel on June 30, 2010. By Order dated July 27, 2010, this Court confirmed the arbitration award in favor of Plaintiffs with respect to Biodiesel.

On May 2, 2011, Fulcrum moved for summary judgment on Plaintiffs' claims against it. The motion was fully briefed on June 30, 2011. The basis of Fulcrum's motion is that (1) "Texas law . . . should govern this action between diverse parties, despite plaintiffs [sic] unilateral election of admiralty jurisdiction," and (2) Plaintiffs' alter ego claim must fail under Texas state law. (Def. Mem. at 1, 2.)

Ultimately, Fulcrum maintains that "[a]t all times, Fulcrum's relationship with NBF was one of investor and start-up company." (Decl. of Jesson A. Bradshaw, dated May 2, 2011, Doc. No. 34 ("Bradshaw Decl."), ¶ 38.) Fulcrum insists that it had different officers, employees, offices, bank accounts, phone numbers, and e-mail addresses than NBF and Biodiesel, and therefore, there was no alter ego relationship between the three entities. (*Id.* ¶¶ 34, 36, 37.)

Plaintiffs, on the other hand, insist that Manalac, one of two limited partners of Fulcrum, made virtually all business decisions as "authorized representative" of NBF and Biodiesel. Specifically, Plaintiffs allege that Manalac ran the day-to-day business of NBF and made high-level

2

business decisions for NBF (Decl. of Claurisse Orozco, dated June 6, 2011, Doc. No. 44 ("Orozco Decl."), Ex. I at 19:9-10); that Manalac arranged for Fulcrum to provide administrative, accounting, and management services to NBF and Biodiesel (*id.*, Ex. I at 68:4-8); that Manalac signed important business documents on behalf of NBF (*id.*, Ex. I at 142:8-15; 144:3-19; 151:23-152:9); that the corporate structure of these entities was "informal" (*id.*, Ex. J at 42:23-24); and that the President and Secretary of Biodiesel played no role in making business decisions (*id.*, Ex. J at 39:5-16; 42:11-14). Plaintiffs insist that "[o]ther than on paper, no one other than Manalac had a role in the management or operation of [Biodiesel]." (Pl. 56.1 Stmt. ¶ 27; Orozco Decl., Ex. J at 53:10-11; *id.*, Ex. I at 141:17-22.) Thus, Plaintiffs argue, material issues of fact remain such that summary judgment on the alter ego claim is not appropriate.

For the reasons that follow, the Court agrees with Plaintiffs and denies Fulcrum's motion for summary judgment.

## II. Legal Standard

The standard for summary judgment is well settled. Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of proving that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has met its burden, the nonmoving party "must come forward with specific facts showing that there is a *genuine issue for trial.*" *Caldarola v. Calabrese*, 298 F.3d 156, 160

(2d Cir. 2002) (emphasis in original) (internal citations and quotation marks omitted).

In ruling on a motion for summary judgment, the court must resolve any ambiguity in favor of the nonmoving party. *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments . . . ." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). As a result, summary judgment will not issue where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, "a complete failure of proof concerning an essential element of the nonmoving party's case" renders summary judgment proper. *Celotex*, 477 U.S. at 323.

## III. Discussion

### A. Maritime Jurisdiction Compels Application of Federal Common Law

Fulcrum does not dispute that the charter party at issue was a maritime contract, thus conferring maritime jurisdiction on this Court. Rather, Fulcrum argues that by designating the case under Rule 9(h) of the Federal Rules of Civil Procedure, Plaintiffs have conceded that both admiralty and diversity jurisdiction apply. (Am. Compl. ¶ 1.) According to Fulcrum, this Court should apply Texas state law to the alter ego claim, because that law would govern under diversity jurisdiction.

To fashion a maritime claim, thereby invoking a federal court's maritime jurisdiction, the pleading generally must contain an allegation that jurisdiction is

3

founded on the admiralty or maritime character of the claim. *See, e.g.,* Fed. R. Civ. P. Form 7(c) (showing an example of how to invoke admiralty jurisdiction). In this case, Plaintiffs expressly invoked the Court's maritime jurisdiction, stating "[t]his is a case of Admiralty and Maritime jurisdiction and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure." (Am. Compl. ¶ 1.) As a result, there can be no doubt that the pleading contained an allegation of admiralty jurisdiction. Furthermore, it is undisputed that the charter party at the heart of the dispute was a maritime contract. The fact that Plaintiffs asserted claims against Fulcrum as an alter ego of Biodiesel does nothing to undermine that fact or vitiate the Court's maritime jurisdiction in this action. *Cf. Pink Goose (Cayman) Ltd. v. Sunway Traders LLC*, No. 08 Civ. 2351 (HB), 2008 WL 4619880, at *2 (S.D.N.Y. Oct. 17, 2008) ("[A]lter-ego theories of liability are prima facie admiralty claims so long as the underlying claim arose in admiralty."); *United States v. Afram Lines (Int'l), Inc.*, No. 91 Civ. 1062 (JSM), 1997 WL 423063, at *1 (S.D.N.Y. July 29, 1997) (applying federal common law to an alter ego claim when the underlying contract at issue was a maritime contract); *In the Matter of the Arbitration between Holborn Oil Trading Ltd. and Interpetrol Bermuda Ltd.*, 774 F. Supp. 840, 844 n.4 (S.D.N.Y. 1991) (noting that the court "clearly ha[d] the power to pierce the corporate veil when sitting in admiralty").

Accordingly, the Court clearly has maritime jurisdiction over the charter party.[2]

Of course, Plaintiffs *could have* asserted diversity jurisdiction as the basis for subject matter jurisdiction in this case, but they instead chose to invoke the court's maritime jurisdiction. In fact, even if Plaintiffs had not alleged maritime jurisdiction, the substantive law of admiralty would apply nonetheless. *See Preston v. Frantz*, 11 F.3d 357, 358-59 (2d Cir. 1993) ("When, as in this case, plaintiffs bring a suit based on diversity jurisdiction, we nevertheless apply substantive federal maritime law if we have admiralty jurisdiction.").

As courts in this Circuit have consistently held for more than two decades, "[f]ederal courts sitting in admiralty must apply federal common law when examining corporate identity." *Holborn*, 774 F. Supp. at 844 (citations omitted); *see also Constellation Energy Commodities Group Inc. v. Transfield ER Cape Ltd.*, 801 F. Supp. 2d 211, 223 (S.D.N.Y. 2011); *Wajilam Exp. (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*, 475 F. Supp. 2d 275, 282 (S.D.N.Y. 2006); *Status Int'l S.A. v. M & D Maritime Ltd.*, 994 F. Supp. 182, 186 (S.D.N.Y. 1998). Put simply, Fulcrum's arguments that federal courts sitting in admiralty are not obligated to apply federal common law and that a Rule 9(h) designation "has no impact on the substantive decisional law to be applied" (Def. Mem. at 11-12), flies in the face of well-established precedent in this district.

---

*S.S. Owners Mut. Protection & Indemnity Ass'n, Inc. v. Lafarge N. Am., Inc.*, 06 Civ. 3123 (CSH), 2008 WL 2980919, at *1 (S.D.N.Y. Aug. 1, 2008) (entertaining an action for a declaratory judgment with admiralty jurisdiction under 28 U.S.C. § 1333 and diversity jurisdiction under § 1332); *St. Paul Fire & Marine Ins. Co. v. Holiday Fair, Inc.*, No. 94 Civ. 5707 (TPG), 1996 WL 148350, at *1 (S.D.N.Y. Apr. 2, 1996) (involving a plaintiff seeking a declaratory judgment in an action designated as one in admiralty).

---

[2] Furthermore, the declaratory remedy sought by Plaintiffs is available under the Court's maritime jurisdiction. *See New York State Waterways Ass'n, Inc. v. Diamond*, 469 F.2d 419, 421 n.1 (2d Cir. 1972) ("It is clear . . . that admiralty jurisdiction will allow the granting of a declaratory judgment."); *Am.*

Faced with such overwhelming authority, Fulcrum points to out-of-circuit precedent to argue that federal courts sitting in admiralty should nonetheless analyze alter ego claims under state law. (Def. Mem., at 12 (citing *In re Carmelita*, No. 1:08-CV-00410, 2009 WL 2356488 (S.D. Tex. July 29, 2009); *Muhs v. River Rats, Inc.*, 586 F. Supp. 2d 1364 (S.D. Ga. 2008); *Missouri Portland Cement Co. v. Walker Barge Fleeting Serv., Inc.*, 561 F. Supp. 12 (W.D. Ky. 1982)).) Aside from the fact that such authority is not binding on this Court, it bears noting that *none* of the cases cited by Fulcrum actually stands for this proposition. Indeed, the cases that Fulcrum cites contain no discussion whatsoever about applying state law rather than federal law, nor is it clear that the respective courts even considered potential differences between state law and federal law. Even more puzzling is Fulcrum's assertion that the Court should apply Texas law – a position in stark conflict with Texas precedent that applies federal common law to maritime alter ego cases. *See Sabine Towing & Transp. Co. v. Merit Ventures, Inc.*, 575 F. Supp. 1442, 1446 (E.D. Tex. 1983) ("[T]hough the court may find the law of one particular state, such as Texas, persuasive, the law to be applied in such cases [when the court is sitting in admiralty] is federal common law."). Accordingly, the Court sees no reason to depart from the overwhelming precedent of this district and will apply federal common law to Plaintiffs' alter ego claims.

## B. Alter Ego Analysis

Under federal common law, courts are reluctant to pierce a corporate veil and impose liability on a separate, related entity, but may do so under extraordinary circumstances. *Arctic Ocean Int'l, Ltd. v. High Seas Shipping Ltd.*, 622 F. Supp. 2d 46, 53 (S.D.N.Y. 2009). In order to "pierce

the corporate veil" under the federal common law standard, a plaintiff must show that an alter ego was used to "perpetrate a fraud" or was "so dominated" and its corporate form so "disregarded" that the alter ego "primarily transacted [another entity's] business rather than [its] own corporate business." *Kirno Hill Corp. v. Holt*, 618 F.2d 982, 985 (2d Cir. 1980).[3]

"Veil piercing determinations are fact specific and differ with the circumstances of each case." *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d, 773, 777-78 (2d Cir. 1995) (internal quotation marks and citation omitted). Thus, the alter ego determination must be made in view of "the totality of the facts." *United States v. Funds Held in the Name or for the Benefit of Wetterer*, 210 F.3d 96, 106 (2d Cir. 2000). There are several factors relevant to determining whether one entity is the "alter ego" of another, and thus whether to pierce the corporate veil. These include:

(1) disregard of corporate formalities; (2) inadequate

---

[3] There is some disagreement about whether alter ego theory under federal common law and state law materially differ. *See New York State Elec. & Gas Corp. v. FirstEnergy Corp.*, --- F. Supp. 2d ---, No. 3:03-CV-0438 (DEP), 2011 WL 3471079 (N.D.N.Y. July 11, 2011) (noting disagreement among courts in this Circuit as to whether New York and federal common law standards for piercing the corporate veil materially differ); *Blair v. Infineon Tech. AG*, 720 F. Supp. 2d 462, 471 n.11 (D. Del. 2010) (suggesting that alter ego analysis is the same under state or federal law). Nevertheless, it is clear that under federal law, litigants pursuing the alter ego theory need not adduce evidence of perpetration of fraud. *See New York State Elec. & Gas Corp.*, 2011 WL 3471079 (noting that recent authorities suggest that under federal common law, to pierce the corporate veil, litigants must only show domination); *Dolco Inv., Ltd. v. Moonriver Dev., Ltd.*, 486 F. Supp. 2d 261, 271-72 (S.D.N.Y. 2007) ("In the Second Circuit, federal common law requires that plaintiff allege only domination to state a claim for alter ego liability.").

capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of business discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities.

*Holborn*, 774 F. Supp. at 844-45; *accord MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC*, 268 F. 3d 58, 63 (2d Cir. 2001) (applying same factors under New York law). No one factor is dispositive, and courts have considered additional factors as well. *See Willamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 53 (2d Cir. 2008) ("Instead of a firm rule, the general principle guiding courts in determining whether to pierce the corporate veil has been that liability is imposed when doing so would achieve an equitable result." (internal quotation marks omitted)).

Looking at "the full spectrum of the relations between the parent corporation and its alleged alter ego," *Holborn*, 774 F. Supp. at 845, and the totality of the facts before it, the Court concludes that a reasonable jury could find that Biodiesel and NBF were alter egos of Fulcrum. First, although the overlap between employees and personnel of Fulcrum, NBF, and Biodiesel is not overwhelming at first glance, Plaintiffs demonstrate that there is at least a factual dispute as to the roles that overlapping employees played. For one thing, Kimberly Casey, a Fulcrum employee, was also President and Secretary of Biodiesel, even though she apparently did not know that she had been so designated. (Orozco Decl., Ex. J at 46:15-20.) Furthermore, Plaintiffs have raised questions about the significance of her position at Biodiesel and whether she was anything more than a figurehead while Manalac made decisions behind the scenes. (*Id.*, Ex. J at 52:19-53:12.)

Additionally, pursuant to an Administrative Services Agreement signed by Manalac on behalf of NBF in October 2005, Fulcrum agreed to provide NBF with certain administrative and support services, such as tax, payroll, and human resources, for $8,500 per month. (Bradshaw Decl. ¶ 29, Ex. I.) However, when NBF failed to pay for the services, Fulcrum never took action to collect the debt. (Decl. of Judith A. Archer, dated May 2, 2011, Doc. No. 36 ("Archer Decl."), Ex. Q at 79:16-25.) Drawing all inferences in favor of Plaintiffs, a reasonable jury could conclude that under this Agreement, all the employees performing administrative and support services for NBF and Biodiesel were actually Fulcrum employees, since neither NBF nor Biodiesel ever actually paid Fulcrum for the services rendered. *Cf. William Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 139-140 (2d Cir. 1991) (noting that overlap in staff, officers, and directors, and that employees of one corporation were sometimes paid as though they actually worked for another corporation were factors indicating that piercing the corporate veil would be appropriate).

Although Fulcrum minimizes Manalac's role in managing NBF and Biodiesel, Plaintiffs have presented a factual dispute with regard to the significance of Manalac's involvement. Under Plaintiffs' theory of the case, Manalac made virtually all business decisions on behalf of NBF and Biodiesel as

an "authorized representative." (Orozco Decl., Ex. I at 198:4-13; 142:1-12; 144:8-14; Ex. J at 53:11-12.) And even though Manalac was not given an officer title at Biodiesel – those titles went to Casey, who, as noted above, apparently was not even aware of her positions at Biodiesel – Plaintiffs have raised a genuine issue of material fact as to whether Manalac exerted significant control over NBF and Biodiesel. *See Ridge Clearing & Outsourcing Solutions, Inc. v. Khashoggi*, No. 07 Civ. 661 (RJH), 2011 WL 3586455, at *9 (S.D.N.Y. Aug. 12, 2011) (finding that defendant "dominated and controlled" a corporation when, among other factors, defendant "exercised nearly unbridled discretion" over the corporation's business activities and where "other officers . . . occupied essentially ministerial roles at the company" (internal quotation marks and citations omitted)).

Furthermore, Plaintiffs have presented evidence to suggest that both NBF and Biodiesel had very limited discretion over business decisions that directly affected both entities. For instance, Plaintiffs allege that Casey was not aware of the Administrative Services Agreement, suggesting that Manalac unilaterally executed the agreement. (Orozco Decl., Ex. J at 36:14-22.) Nor was Casey aware that Fulcrum guaranteed loans made to NBF or that Fulcrum later assumed those loans. (*Id.*, Ex. J at 35:4-25.) Plaintiffs have also adduced evidence that supports their contention that Kevin Gorman, the NBF employee responsible for negotiating the charter party at issue, was directly controlled by Manalac. (*Id.*, Ex. E.) Plaintiffs also point to evidence suggesting that Manalac singlehandedly made the decision to dissolve NBF and Biodiesel. (*Id.*, Exs. A & B.)

Plaintiffs have also raised issues of fact as to whether the three entities actually maintained separate addresses, telephone numbers, and e-mail addresses. Fulcrum's offices were located at 5120 Woodway in Houston, Texas from August 2003 to September 2010. (Bradshaw Decl. ¶ 33.) Although NBF employees worked out of various offices, Plaintiffs present facts that indicate that mail was received at 5120 Woodway on behalf of NBF and Biodiesel, and that phone calls for NBF and Biodiesel were answered at 5120 Woodway. (Orozco Decl., Ex. I at 20:21-24; 51:5-13; 146:6-15.) Biodiesel listed 5120 Woodway on its letterhead and as its address on fund transfers that it received from Fulcrum. (Archer Decl., Ex. M; Orozco Decl., Ex. G.) Furthermore, Plaintiffs have presented evidence to dispute Fulcrum's contention that separate e-mail addresses were used by overlapping employees depending on which entity they were dealing with. (Orozco Decl., Ex. E.)

In terms of commingling funds between entities, Plaintiffs have presented evidence that operating funds for both NBF and Biodiesel came directly from Fulcrum. (*Id.*, Ex. I at 228-233; Ex. G.) Additionally, the evidence suggests that Fulcrum paid settlements to third parties and legal fees on behalf of NBF and Biodiesel, and forgave NBF's substantial non-payment of the Administrative Service Agreement. (*Id.*, Ex. G; Ex. I at 240:15-241:23; 80:3-81:5.) *See REA Navigation, Inc. v. World Wide Shipping, Ltd.*, No. 08 Civ. 9951 (SAS), 2009 WL 3334794, at *3 (S.D.N.Y. Oct. 14, 2009) (recognizing payment of alleged alter ego's debts as one factor to support continued attachment of defendant's funds).

As noted above, the determination of alter ego status is a factual one. *NLRB v. County Van & Storage Inc.*, No. 97 Civ. 2099 (JSM), 1997 WL 282212, at *4 (S.D.N.Y. May 28, 1997). In this case, Plaintiffs have presented genuine issues of

material fact regarding the factors in the alter ego analysis, and based on the evidence before the Court, it appears that reasonable jurors could draw differing conclusions as to whether Biodiesel and NBF were alter egos of Fulcrum. *See also William Passalacqua Builders, Inc.*, 933 F.2d at 139-140 (2d Cir. 1991) (analyzing an alter ego claim under the ten factor test and concluding that a jury could find sufficient domination to justify piercing the corporate veil); *Camofi Master LDC v. College P'ship, Inc.*, 452 F. Supp. 2d 462, 472-74 (S.D.N.Y. 2006) (finding that "reasonable jurors could draw differing conclusions as to whether [the entities] were alter egos" and therefore, summary judgment on the issue was not appropriate). Accordingly, the Court cannot say, as a matter of law, that Plaintiff's alter ego claims must fail.

## IV. CONCLUSION

For the reasons stated above, Fulcrum's motion for summary judgment is DENIED. The Clerk of the Court is respectfully requested to terminate the motion located at Doc. No. 32.

IT IS FURTHER ORDERED that the parties shall submit a joint letter no later than March 8, 2012, advising the Court as to whether additional discovery is required, and if so, attaching a proposed case management plan and scheduling order. A template is available at http://nysd.uscourts.gov/cases/show.php?db=judge_info&id=347.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: February 15, 2012
New York, New York

\* \* \*

Plaintiffs are represented by Claurisse Ann Campanale-Orozco and Thomas Leonard Tisdale of Tisdale Law Offices, LLC, 11 West 42nd Street, New York, New York 10036.

Fulcrum is represented by Judith A. Archer and Sarah E. O'Connell of Fulbright & Jaworski LLP, 666 Fifth Avenue, New York, New York 10103.

8